COMMONWEALTH *vs.* CHARLES GAGNE.

Bristol.    October 28, 1890. — February 6, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Constitutional Law — Intoxicating Liquors — Original Package — Indictment
— Evidence.*

The Pub. Sts. c. 100, prohibiting the sale of intoxicating liquors, except as author-
ized therein, is not rendered inoperative by the omission of an express exception
in favor of liquors imported from other States and offered for sale in the original
packages.

An indictment for unlawfully exposing and keeping for sale intoxicating liquors,
with intent unlawfully to sell the same in this Commonwealth, without having
any license, appointment, or authority, need not negative that such liquors were
imported from another State and exposed and kept for sale in the original
packages.

At the trial of an indictment for unlawfully exposing and keeping for sale intoxi-
cating liquors with intent to sell the same, evidence of police officers as to what
they had seen, in connection with the conduct and management of the place
where it was alleged the offence was committed, within seven months of the
times alleged, is not so remote that it may not properly be admitted in the dis-
cretion of the presiding judge.

INDICTMENT, under the Pub. Sts. c. 100, § 1, in two counts,
alleging that Charles Gagne, at Fall River, on January 23 and
25, 1890, respectively, "unlawfully did expose and keep for
sale intoxicating liquors with intent unlawfully to sell the same
in this Commonwealth, he, the said Charles Gagne, not having
then and there any license, authority, or appointment according
to law therefor."

In the Superior Court, before the jury were impanelled, the
defendant moved to quash the indictment for the following rea-
sons : "1. Because said indictment does not state or charge
any offence known to the law.   2. Because said indictment does
not set forth plainly, formally, and substantially any offence
as known to the law.   3. Because said indictment does not aver
that the intoxicating liquors, which it charges the defendant un-
lawfully did expose and keep for sale, were not liquors brought
into this Commonwealth from some other State in original pack-
ages, and were not in said packages so exposed and kept for
sale.   4. Because said indictment does not set forth by name

the kind of intoxicating liquors so exposed and kept for sale."
*Sherman*, J. overruled the motion.

At the trial, the government was permitted to introduce, against the objection of the defendant, the testimony of three police officers, that, during the seven months before the times alleged in the indictment, they had at intervals seen intoxicated persons going into and out of the place in question.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. W. Cummings & E. Higginson*, for the defendant.

*A. J. Waterman*, Attorney General, *& H. A. Wyman*, Second Assistant Attorney General, for the Commonwealth.

BY THE COURT. The following opinion was written by Mr. Justice DEVENS, and after his death was adopted as the opinion of the court by the Justices who sat with him at the argument.

It is the contention of the defendant that chapter 100 of the Public Statutes, under which he was indicted, is unconstitutional, because there is no express exception to the prohibition strictly forbidding the sale of intoxicating liquors, except as authorized in that chapter, of liquors sold in the original packages as they are imported from other States. The defendant further contends, that, if the statute could be held constitutional, the indictment would still be defective in failing to negative, in the description of the sale with which he is charged, that it was liquor imported from another State, and sold in the original package.

It has been held by many authorities, that, where a statute is in some aspects or in relation to some subjects unconstitutional, but in other aspects is not, the whole statute is not to be declared void, unless the parts are so connected and so interdependent that they cannot be separated, or those which are unconstitutional are of such a character that it must be inferred that but for them and their assumed validity the legislation would not have been had. *Commonwealth* v. *Clapp*, 5 Gray, 97, 100. *Armstrong* v. *Jackson*, 1 Blackf. 374. *People* v. *Hill*, 7 Cal. 97. *People* v. *Briggs*, 50 N. Y. 553. A law which is unconstitutional within certain limitations, if in terms it exceeds or fails to notice those limitations, may yet be entirely operative within its legitimate sphere, and properly held to have the application which thus confines it. Indeed, where two governments, like

those of the United States and the Commonwealth, exercise their authority within the same territory and over the same citizens, the legislation of that which as to certain subjects is subordinate should be construed with reference to the powers and authority of the superior government; and not be deemed as invading them unless such construction is absolutely demanded. It should be held that such legislation was intended to apply, so far as it was within its sphere, and such construction should be given to it. The police power possessed by the States to pass those regulations necessary to preserve health, morality, order, and peace among their citizens, if not as easily defined, is as absolute as the right of the national government to regulate commerce with foreign nations or among the several States. The laws passed in the exercise of this power should receive such an interpretation, notwithstanding the generality of the terms in which they may be expressed, as will confine them in their application to those subjects with which they may lawfully deal.

While a general law, which undertook to deal with both past and future offences, and to provide a punishment therefor, would be unconstitutional, if sought to be applied to the former, its invalidity in this respect would not defeat its operation in reference to the latter. *Fisher* v. *McGirr*, 1 Gray, 1. In a similar manner, a law in regard to contracts expressed in general terms which would include both past and future contracts, while it might be void as to the former, as seeking to violate the obligations of existing contracts, would be valid as applied to all which were entered into after its passage. Cooley, Const. Lim. (6th ed.) 213. *Ross's case*, 2 Pick. 165. *Mundy* v. *Monroe*, 1 Mich. 68. *Cargill* v. *Power*, 1 Mich. 369.

In *Commonwealth* v. *Kimball*, 24 Pick. 359, 362, it is said by Chief Justice Shaw, in considering the Rev. Sts. c. 47, § 3, by which the sale of intoxicating liquor in less quantities than twenty-eight gallons, except as authorized thereby, was forbidden, but which chapter contained no exception in favor of sales by importers in the original importation packages: "But it is argued for the defendant, that the prohibition to sell is general, and makes no distinction between the cases of a sale by the importer of imported spirits in the original packages, supposing them under

twenty-eight gallons, and the sale of spirits not imported, or not by the importer, or not in the original packages. Be it so; what is the consequence? Supposing the law could be construed to be repugnant to the Constitution of the United States, in so far as it prohibited the sale of imported spirits by the importer in the original package, it would be void thus far and no further, and in all other respects conforming to the acknowledged power of the State government, it would be in full force." The opinion treats the fact, if it existed, that the spirits sold were sold by the importer in the original package, as matter which might have been of importance if it had appeared, but holds the statute, notwithstanding the omission of the exception referred to, as constitutional.

In what are generally known as the License Cases, (*Thurlow* v. *Massachusetts*, 5 How. 504;) the same statute of this Commonwealth came under discussion, and was pronounced constitutional. While the statute forbade the sale of spirituous liquor in less quantities than twenty-eight gallons, and while the law of the United States permitted its importation in casks of fifteen gallons, the precise point we are now considering, that by its general terms, as there was no express exception in the statute, it must be construed as forbidding the sale of spirituous liquors by the importer in the original packages in which he might lawfully import them, was neither raised by counsel nor touched upon by the court. This omission is noteworthy, as great importance was attached to the cases; they were argued by eminent counsel, and elaborate opinions affirming the constitutionality of the statute of this Commonwealth, and also of other statutes of New Hampshire and Rhode Island, were read by six of the nine Justices of the Supreme Court of the United States. The point urged by the defendant could hardly have escaped attention if really of weight, especially as it had been noticed in the opinion of *Commonwealth* v. *Kimball, ubi supra;* but throughout the discussion it was apparently held sufficient that the sales of spirituous liquor as there proved were in less quantity than that in which importation was allowed. It was not suggested that the constitutionality of the statute was affected by its general terms, or that the indictment was defective in failing to negative sales which might lawfully have been made.

In *State* v. *Amery*, 12 R. I. 64, it was held that the Gen. Sts. of R. I. c. 79, forbidding the sale and keeping for sale of intoxicating liquors, and containing no exception in favor of the importer whose imported liquors remain and are sold in the original package, although it might be held void as to such importers, was valid as applied to others. See also *Tiernan* v. *Rinker*, 102 U. S. 123.

The statute we are considering contains an exception in favor of sales by importers of foreign liquors in the original packages. Pub. Sts. c. 100, § 4. It does not in terms contain an exception of such sales of liquors when made by importers from one State into another. But if such sales are lawful under the constitutional authority of the United States, and such as are not to be affected by the legislation of the Commonwealth, the principle which has been applied to the sale of foreign imported liquors requires us to hold that the statute does not affect, and is not intended to affect, such sales. The mere circumstance that one exception has been made in terms cannot be deemed to indicate that other exceptions, which exist by reason of the relation of the Commonwealth to the government of the United States, are not to be read into and made a part of the statute. It is to have that interpretation which will make it apply in accordance with the relation that exists between the national government and that of the several States in the exercise of their respective powers as that relation is determined to be by the Supreme Court of the United States, the final authority in that matter.

Whether the failure to specify an exception to the general terms of the statute, so far as liquors imported from other States and sold in the original packages were concerned, proceeded from accident, or from the fact that it was deemed unnecessary, or from misunderstanding as to the existence of such an exception, need not be inquired; the legislative intent was to enact a statute consistent with its powers under the Constitution of the United States, and it should be construed in this aspect.

In *Peirce* v. *New Hampshire*, 5 How. 504, one of the group of cases known as the License Cases, it was held that a statute of New Hampshire prohibiting the sale of spirituous liquors was constitutional, although in that case the article sold was a barrel of American gin, purchased in Boston and carried coastwise to

the landing at Piscataqua Bridge in New Hampshire, and there sold in the same barrel. In *Leisy* v. *Hardin*, 135 U. S. 100, this case has been overruled, and it has there been held that a statute of a State prohibiting the sale of any intoxicating liquor, except for certain specified purposes and under license from the county court of a State, is, as applied to a sale by the importer of such liquors manufactured and brought from another State, and in the original packages or kegs unbroken and unopened, unconstitutional and void, as repugnant to the clause of the Constitution granting to Congress the power to regulate commerce with foreign nations and among the several States. It will be observed that the statute of Iowa, which was the State the statute of which was in question in the case last cited, was not pronounced wholly unconstitutional, but only so in its attempted application to the importation of a package from another State and its sale unbroken by the importer, and the case was remanded to be tried in accordance with that opinion. It is not an authority for the position that the whole statute was unconstitutional, by reason that it did not contain an exception of liquors imported from another State, but only that the attempted application to them was so.

In the case at bar, there was no contention that liquors, which the evidence tended to show were sold or kept for sale by the defendant, were original packages imported from another State, and so sold or kept for sale by the defendant, nor any request for a ruling that, if so, the statute would not be applicable.

For the reasons stated above, we are of opinion that the statute is not unconstitutional by reason of the fact that no express exception is made in favor of liquors imported in original packages from other States.

Nor do we deem the indictment defective. It alleges that the defendant unlawfully exposed and kept for sale with intent to sell the same, and not having then and there any license, authority, or appointment according to law therefor. Our authorities fully sustain the position that it is not necessary to negative the various modes and contingencies in which it might be lawful to sell, or expose for sale, spirituous or intoxicating liquor. *Commonwealth* v. *Lafontaine*, 3 Gray, 479. *Commonwealth* v. *Gilland*, 9 Gray, 3. *Commonwealth* v. *Purtle*, 11 Gray, 78. *Commonwealth* v. *Shea*, 115 Mass. 102.

The evidence of three police officers as to what they had seen, in connection with the conduct and management of the place where it was alleged the defendant committed the offence charged, during the seven months before the times alleged, was not so remote that it might not properly have been admitted in the discretion of the presiding judge.

*Exceptions overruled.*