STATE, Appellant, *v.* NORTHERN PACIFIC EX-
    PRESS COMPANY, Respondent.

(No. 1,807.)

(Submitted January 7, 1903.   Decided February 6, 1903.)

*Interstate Commerce—Regulation—Occupation Tax—Validity.*

An express company transacting interstate and intrastate business is not liable for an occupation tax, under Political Code, Section 4074, imposing such

a tax on "any carrier" transmitting goods "from one place to another," since the statute, not making any discrimination between local and interstate business, contravenes the federal constitution, giving congress sole power to regulate interstate commerce.

MR. JUSTICE MILBURN, dissenting.

*Appeal from District Court, Lewis and Clarke County; H. C. Smith, Judge.*

ACTION by the state of Montana against the Northern Pacific Express Company. From a judgment for defendant, plaintiff appeals. Affirmed.

*Mr. James Donovan, Attorney General,* for the State.

*Mr. William Wallace, Jr.,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The parties to this action, proceeding under the provisions of Section 2050 of the Code of Civil Procedure, agreed upon a case containing the facts upon which the controversy depends, and submitted the same to the district court for determination.

The county treasurer of Lewis and Clarke county, in the name of the state, sought to collect a license or occupation tax from the defendant, Northern Pacific Express Company. The facts agreed upon, so far as they are material to a determination of the question in dispute, are that the defendant, Northern Pacific Express Company, is a foreign corporation engaged in carrying express matter for hire from points in this state to other points in this state, and also from points in this state to points without this state; that it maintains an office in Helena, and has paid its taxes upon all its property in the state; and that neither the defendant company, nor its agent, has ever applied for or obtained a license to conduct such business.

The question submitted to the district court for decision was: "Is the defendant company liable for a license fee or an occupation tax under the laws of the state of Montana?" This ques-

tion the district court answered in the negative and entered a judgment for the defendant for costs, from which judgment the state prosecuted this appeal.

Section 4074 of the Political Code, which provides for licenses for express companies, is as follows: "Every person, association or corporation who engages as a common carrier in transmitting or conveying gold dust, gold and silver coin or bullion, money or bank notes, packages or express matter, or passengers from one place to another for hire or profit must procure a license and pay therefor in each county where the business is transacted as follows: Those doing business to the amount of fifty thousand dollars or over per quarter, must pay one hundred and eighty-seven dollars and fifty cents per quarter. This section shall not apply to street railway companies. Those doing business in any county to the amount of thirty thousand dollars and under forty thousand dollars per quarter, must pay ninety-three dollars and seventy-five cents per quarter. Those doing business in any county to the amount of twenty thousand dollars, and under thirty thousand dollars per quarter, must pay sixty-two dollars and fifty cents per quarter. Those doing business in any county to the amount of ten thousand dollars, and under twenty thousand dollars per quarter, must pay thirty-seven dollars and fifty cents per quarter, and in any amount under ten thousand dollars and over five thousand dollars per quarter, must pay twenty-five dollars and twenty-five cents per quarter, and in any amount under five thousand dollars per quarter, must pay twelve dollars and fifty cents per quarter." It will be noted that the language of Section 4074, above, is: "Every * * * corporation who engages as a common carrier in * * * conveying * * * express matter * * * from one place to another for hire * * * must procure a license * * *;" and Section 4043 of the Political Code requires that the license shall be obtained as a condition precedent to the carrier's doing any business. Our inquiry, then, is, is this an attempt on the part of the state to interfere with or regulate interstate commerce, or, in other

words, does the license or occupation tax provided for above affect the business of the defendant company which is interstate in its character, or only that business which is purely local or *intra*state?

While there are some exceptions to be found in the decided cases, we believe the very great weight of authority fairly establishes this as a general rule for the interpretation of license statutes, as applicable to cases of the character of this one now under consideration, viz.: "Where a carrier is engaged in both interstate and *intra*state business, in the imposition of a tax upon such carrier the interstate business must be discriminated from the *intra*state business, or it must be made capable of such discrimination, so that it may clearly appear that the *intra*state business alone is taxed. Whenever the subjects of taxation can be separated so that that which arises from interstate commerce can be distinguished from that which arises from commerce wholly within the state, the distinction will be acted upon by the courts, and the state permitted to collect the tax arising upon commerce solely within its own territory." If, however, the terms of the statute are general, and the license fee a unit charged against the business of the carrier as such,—as strictly an occupation tax,—and no attempt is made by the language of the statute to discriminate between the local and interstate business, but the license is required as a condition precedent to the carrier's commencing or conducting business, then the imposition of the tax will be deemed an interference with and an attempt to regulate interstate commerce, and for that reason void. (17 Am. & Eng. Enc. Law (2d Ed.), 110.)

This distinction has been noted frequently, and, with few exceptions, has been recognized and followed by the courts. In each of the following cases the party upon whom the license was imposed was engaged in both local and interstate commerce.

In *Express Co.* v. *Seibert,* 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035, the court had under consideration a statute of Missouri which provides that express companies should make report of business done *"within this state,"* and requiring an

annual license fee or occupation tax based thereon; and, in disposing of the question whether the statute was intended to or did apply to or affect interstate commerce, the court says: "Was the business of this express company in the state of Missouri, on the receipts from which the tax in question was assessed under this act, interstate commerce? The allegation of the bill is very positive that in the prosecution of its business as an express company the complainant is engaged in part in the transportation of goods and other property between the states of Nebraska, Kansas, Texas, and other states of the Union, and the state of Missouri; and also in the business of carrying goods between different points within the limits of the state of Missouri. The question on this point, therefore, is narrowed down to the single inquiry whether the tax complained of in any way bears upon or touches the interstate traffic of the company, or whether, on the other hand, it is confined to its *intra*state business. We think a proper construction of the statute confines the tax which it creates to the *intra*state business, and in no way relates to the interstate business of the company. The act in question, after defining in its first section what shall constitute an express company, or what shall be deemed to be such in the sense of the act, requires such express company to file with the state auditor an annual report 'showing the entire receipts for business done *within this state* of each agent of such company doing business *in this state*,' etc., and further provides that the amount which an express company pays 'to the railroads or steamboats *within this state* for the transportation of their freight *within this state*' may be deducted from the gross receipts of the company on such business; and the act also requires the company making a statement of its receipts to include, as such, all sums earned or charged 'for the business done *within this state*,' etc. It is manifest that these provisions of the statute, so far from imposing a tax upon the receipts derived from the transportation of goods between other states and the state of Missouri, expressly limit the tax to receipts for the sums earned and charged for the *business done within the state.*

This positive ånd oft-repeated limitation to business done within the state (that is, business begun and ended within the state) evidently intended to exclude, and the language employed certainly does exclude, the idea that the tax is to be imposed upon the interstate business of the company. 'Business done within this state' cannot be made to mean business done between that state and other states. We therefore concur in the view of the court below that it was not the legislative intention, in the enactment of this statute, to impinge upon interstate commerce, or to interfere with it in any way whatever; and that the statute, when fairly construed, does not in any manner interfere with interstate commerce."

To the same effect is the decision in *Pullman Co.* v. *Adams,* 78 Miss. 814, 30 South. 757, 84 Am. St. Rep. 647, construing a statute of Mississippi containing this provision with reference to the imposition of a license tax, viz.: "On each sleeping and palace car company carrying passengers from one point to another in this state, $100," etc.

So, in *Osborne* v. *Florida,* 33 Fla. 162, 14 South. 588, 25 L. R. A. 120, 39 Am. St. Rep. 99, a statute which imposed a license tax on "all express companies *doing business in this state,*" etc., was held by the supreme court of Florida to affect only local, as distinguished from interstate, commerce; and on appeal to the supreme court of the United States this construction of the statute was approved, and the judgment affirmed. (164 U. S. 650, 17 Sup. Ct. 214, 41 L. Ed. 586.)

So, in *Railroad Co.* v. *Harris,* 99 Tenn. 684, 43 S. W. 115, 53 L. R. A. 921, an act of the Tennessee legislature imposing a license upon carriers for transporting freight or passengers *"from one point in this state to another point in this state"* was held to have no application to interstate commerce; and valid. To the same effect is the decision in *W. U. Tel. Co.* v. *City of Fremont,* 39 Neb. 692, 58 N. W. 415, 26 L. R. A. 698.

In *Postal Tel. Cable Co.* v. *City Council of Charleston,* 153 U. S. 692, 14 Sup. Ct. 1094, 38 L. Ed. 871, an ordinance of the city of Charleston which imposed a license tax upon "busi-

ness done exclusively within the city of Charleston and not in-
cluding any business done to or from points without the state,"
etc., was held valid, and no encroachment upon the exclusive
power of congress to regulate interstate commerce.

To the same effect are the decisions in *Ogden City* v. *Cross-
man,* 17 Utah, 66, 53 Pac. 985; *State ex rel. Beek* v. *Wagener,*
77 Minn. 483, 80 N. W. 633, 778, 1134, 46 L. R. A. 442, 77
Am. St. Rep. 681; *Moore* v. *City of Eufaula,* 97 Ala. 673, 11
South. 921; *Railroad Co.* v. *Harris,* 99 Tenn. 684, 43 S. W.
115, 53 L. R. A. 921.

In *State* v. *Rocky Mt. Bell Telephone Co.,* 27 Mont. 394, 71
Pac. 311, this court, in construing Section 4071 of the Political
Code, which imposes a license tax upon every telephone com-
pany doing business *in this state,* held that by express terms the
statute discriminated between local and interstate commerce,
and that the manifest intention of the legislature that only local
business should be subject to such license was clearly expressed.

It will be observed that, in the several statutes under consider-
ation in the above cases, apt words are used, expressing the
legislative intention to impose the license upon the local busi-
ness only.

On the other hand, an ordinance which provided "that the
license tax for the year   *   *   *   is hereby fixed as follows:
On telegraph companies, $225, * * *" was held invalid as
being an attempt to interfere with interstate commerce, and the
supreme court of the United States said: "But it is urged that
*a portion of the* telegraph company's business *is internal* to the
state of Alabama, and therefore taxable by the state. But that
fact does not remove the difficulty. *The tax affects the whole
business without discrimination.* There are sufficient modes in
which the internal business, if not already taxed in some other
way, may be subjected to taxation without the imposition of a
tax which covers the entire operations of the company. *   *
*  In our opinion, such a construction of the constitution leads
to the conclusion that no state has the right to lay a tax on in-
terstate commerce in any form, whether by way of duties laid

on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it·on; and the reason is that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to congress." (*Leloup* v. *Port of Mobile,* 127 U. S. 640, 8 Sup. Ct. 1380, 32 L. Ed. 311.)

` To the same effect is the decision of the same court construing a law of Kentucky which requires from the agent of every express company not incorporated by the laws of Kentucky a license, before he can carry on any business for such company. In reversing the court of appeals of Kentucky, the court says: "We regret that we are unable to concur with the learned court of appeals of Kentucky in its view on this subject. The law of Kentucky which is brought in question by the case requires from the agent of every express company not incorporated by the laws of Kentucky a license from the auditor of public accounts, before he can carry on any business for said company in the state. This, of course, embraces interstate business as well as business confined wholly within the state." (*Crutcher* v. *Kentucky,* 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649.)

And to the same effect is the decision of the same tribunal in construing a statute of Tennessee which provided with reference to sleeping cars used over roads, but not owned by such roads, as follows: "And the companies    *    *    *    shall pay    *    *    *    $50.00 (per annum) for each and every of said cars or coaches used or as run over said roads." (*Pickard* v. *Car Co.,* 117 U. S. 34, 6 Sup. Ct. 635, 29 L. Ed. 785.)

In *Webster* v. *Bell,* 15 C. C. A. 360, 68 Fed. 183, the court had under consideration an ordinance of the city of Alexandria, Va., which provided, among other things: "Sec. 49. On every express company having an office in the city of Alexandria, Virginia, and receiving goods, wares and merchandise, and forwarding them to points within the state of Virginia, or receiving goods, wares and merchandise within the the state of Virginia, and delivering them in the city of Alexandria, there shall be levied and collected a license tax of $150. This ordinance shall be of force from

its passage,"—and, in construing its provisions, said: "The tax is on every express company having an office in the city of Alexandria, and receiving goods, etc., and forwarding them to points within the state of Virginia. Receiving them from what points? Evidently from any quarter within or without the state, for the next sentence is, 'or receiving goods, wares and merchandise within the state of Virginia and delivering them in the city of Alexandria.' This is a description of the business taxed. * * * The ordinance of the city of Alexandria makes no discrimination whatever between business done without and within the state, but, imposing a tax on the company if it has an office in that city, and if some of its business is between points in the state of Virginia, is repugnant to the interstate commerce law, and is void."

To the same effect are the decisions in *Southern R. Co.* v. *City of Asheville* (C. C.), 69 Fed. 359, and *Southern Exp. Co.* *City of Ensley* (C. C.), 116 Fed. 756.

The province of this court is to construe the statute as we find it, not to read into it terms which are not there under any fair interpretation of the language used.

The license tax imposed under Section 4074, above, is a gross amount imposed upon the entire business of the express company, and required as a condition precedent to its engaging in or following its occupation.

The statute does not, by its terms, attempt to make any discrimination between the local and interstate business of the defendant company, and no such discrimination can be made under any fair construction of the language employed.

We hold, therefore, that the statute attempts to impose the license upon the entire business of the company, and, a portion of that business being interstate in its character, the license is an interference with, and an attempted regulation of, interstate commerce, and is void, as in contravention of the constitutional provisions conferring upon congress sole power to regulate commerce with foreign nations, among the several states, and with the Indian tribes.

It is also urged that Section 4074, above, is invalid for want of uniformity in its provisions, in that no license is required of companies doing business to the extent of $40,000 and under $50,000 per quarter; but, under our views of the case, it is unnecessary to consider this question.

The judgment appealed from is affirmed.

*Affirmed.*

MR. JUSTICE MILBURN: I dissent.