Let an order be presented for settlement and entry, accordingly.

## MOUNTAIN STATES TELEPHONE & TELEGRAPH CO. v. COONEY, Governor, et al.

### No. 1495.

District Court, D. Montana.
May 21, 1934.

Milton Smith, Jr., and J. R. Turnquist, both of Denver, Colo., and Gunn, Rasch, Hall & Gunn, of Helena, Mont., for plaintiff.

Raymond T. Nagle, Atty. Gen., of Montana, and Enor K. Matson, Asst. Atty. Gen., of Montana, for defendants.

Before GARRECHT, Circuit Judge, and PRAY and BOURQUIN, District Judges.

BOURQUIN, District Judge.

In this suit to enjoin local taxes, the hearing is interlocutory and final.

The statute (Mont. Sess. Laws, 1933, c. 174, amended 1933-34, Ex. Sess. c. 54) provides that all operating telephone lines and furnishing service in Montana shall pay for each phone used in such business, an occupation license tax for revenue of 20 cents to $2 per year, dependent upon the number of phones and rates charged. Nonpayment or/ and shifting the burden to patrons may be heavily penalized. The receipts are to be credited to the state's emergency fund until the Governor proclaims no longer so required, and thereafter to the general fund.

Plaintiff is a Colorado corporation owning and operating the only state-wide tele-

phone system in Montana, employing over 34,000 phones subject to the tax, all of which are available for interstate and foreign communication by connection with 30,000,000 phones, and which have been and are so used in number some 10,000 since the tax was imposed, increasing monthly, and in due time it is reasonably likely all will be.

The interstate revenues are 4 to 8 per cent. of the total revenues by plaintiff received. It pays the usual property taxes in Montana, and the corporation license or occupation taxes which are a percentage of its intrastate revenues.

In respect to the impost involved, its contention is it is obnoxious to many and doubtless all provisions of the Constitution, federal and state, even remotely applicable. Briefs filed are anything but that, but we find it unnecessary to note and attempt to distinguish and reconcile the multitude of hairline cases cited, leaving the task, if feasible, to the court of them and to which appeal will be taken. For it is clear that the suit is indistinguishable in principle from the Adams Express Case, 232 U. S. 14, 34 S. Ct. 203, 58 L. Ed. 483, and the Continental Oil Case, 256 U. S. 642, 41 S. Ct. 606, 65 L. Ed. 1139, the rule of which condemns the tax for repugnancy to the commerce clause of the Federal Constitution (Const. art. 1, § 8, cl. 3). That is to say, said clause to Congress reserves regulation of interstate and foreign commerce, the states have no power therein, a tax like to this at bar upon instrumentalities and not commodities is a burden upon such commerce and in legal effect a regulation of it, in consequence of which it is void.

In Adams Case, the city undertook to exact a license occupation tax for revenue in amount $5 per year upon express wagons. Adams doing interstate and intrastate express business with 341 wagons, brought suit like to this at bar to enjoin collection of the tax as in contravention of the commerce clause.

Sustaining the contention, Mr. Justice Hughes observed that, though the tax might be construed to apply to intrastate business alone, yet as both varieties of business employed the same wagons and separation was impracticable, to constrain the company to pay the tax and secure a license because of its intrastate business would be to virtually coerce it to pay a tax and secure a license to do its interstate business, and unconstitutional for reasons aforesaid.

In the Continental Case the state imposed a license occupation tax for revenue in amount $50 per year upon each gasoline station. The oil company had 37 stations in the state, doing business interstate and intrastate, the former but 5.5 per cent. of the total, and brought suit like to this at bar. Applying the rule of the Adams Case, though not citing it, the tax was held void, for that, even if the state court would construe the tax to apply only to intrastate business, both varieties were necessarily done at any one station and the tax on the intrastate business, as a prerequisite to lawful business, was an impost upon the interstate business as well, illegal, and unenforceable against even the intrastate business.

Both said cases are cited with approval in Sprout's Case, 277 U. S. 171, 48 S. Ct. 502, 505, 72 L. Ed. 833, 62 A. L. R. 45, in support of Mr. Justice Brandeis' opinion that, though a state may impose occupation taxes upon any engaged in both intrastate and interstate business, "in order that the fee or tax shall be valid, it must appear that it is imposed solely on account of the intrastate business; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the imposition; and that the person taxed could discontinue the intrastate business without withdrawing also from the interstate business."

It may be granted that the tax at bar satisfies the first, second, and third of the conditions aforesaid. That is that the state court would so construe the statute. See State v. Tel. Co., 27 Mont. 394, 71 P. 311. Nevertheless it fails in respect to the fourth of them. For in this day and age it is clear separate state-wide systems for intrastate and interstate phones are not feasible, hardly possible, and to deny the proprietor of the latter the right to also operate the former would so heavily handicap and burden him, it would virtually destroy his business, burden and destroy interstate communication or commerce. Even as in the Adams and Continental cases, herein separation is impracticable, combination is necessary; and citing those cases to his conditions, by his fourth thereof Mr. Justice Brandeis evidently means that withdrawal to escape the tax must be practicable and combination not necessary, or the tax is invalid.

The principle of said cases is that a burdensome state occupation tax on instrumentalities necessarily used in both interstate and intrastate commerce is a regulation of the former and invalid; and a trial court can do no better or worse than to align with it, however the personnel or views of the appellate

14

tribunal may change. In interstate and intrastate rate regulation is clear analogy.

It is somewhat surprising that, in imposing taxes on corporations like plaintiff, Legislatures so often transgress the commerce clause. For, as the Supreme Court has often observed, be they not taxed sufficiently, there are many ways to impose a valid tax upon their intrastate business without affecting their interstate business. Indeed, Montana resorts to one of them in the corporation license or occupation tax which plaintiff pays.

Perhaps as curious a way as any to escape running foul of the commerce clause and upheld by the Supreme Court is that of Edelman's Case, 289 U. S. 249, 53 S. Ct. 591, 77 L. Ed. 1155. In that case the corporation imported and stored gasoline for its own use intrastate and interstate. The state imposed a license tax of 4 cents per gallon upon the "use" of gasoline within it. And the court held that as the state administered the law as a tax on the "use" of the gasoline in withdrawing it from storage and putting it in the interstate planes, the tax is valid! Carried to its logical conclusion, interstate commerce can be strategically subjected to any tax.

If the rule be sound, why would not the tax at bar be valid had the statute declared it imposed upon the phones "used" by lifting them from the bracket and before interstate communication commenced, or be valid do the state officers so construe it? But they have not. It is hardly necessary to repeat the tax is a privilege or occupation tax and not a property tax. If it were the latter, however, it would be invalid for contravention of the State Constitution that it shall be levied at a uniform rate upon just valuation.

Decree for plaintiff.

GARRECHT, Circuit Judge (dissenting).

The license in question is nothing more than a tax. The penalty provided is but a mode of enforcing its payment. There is no restriction upon business in interstate commerce. From the record it appears that the fee or tax is imposed solely on account of the intrastate business. The amount exacted is not increased because of the interstate business done. One engaged exclusively in interstate commerce would not be subject to the imposition. The plaintiff could discontinue the intrastate business without withdrawing also from interstate business. It is assumed in the opinion that to require the plaintiff, in order to save the tax, to discontinue its intrastate business would impose too great a burden upon it. If business done wholly within a state is within the taxing power of the state, the courts of the United States cannot review or correct the action of the state in the exercise of that power. Resultant hardship is not within their province to redress. Postal Telegraph-Cable Co. v. Charleston City Council, 153 U. S. 692, 14 S. Ct. 1094, 38 L. Ed. 871; Postal Telegraph-Cable Co. v. Richmond, 249 U. S. 252, 257, 39 S. Ct. 265, 63 L. Ed. 590.